Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DIGNA RIVERA BONILLA<br><br>Demandante - Recurrida<br><br>v.<br><br>JOSÉ BURGOS NEGRÓN<br><br>Demandado - Peticionario | KLCE202401235 | *Certiorari*<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala<br>Municipal de Cayey<br><br>Caso núm.:<br>CY2024CV00252<br>(801)<br><br>Sobre: Desahucio<br>por incumplimiento |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rodríguez Flores y el Juez Marrero Guerrero.[1]

Sánchez Ramos, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

El Tribunal de Primera Instancia ("TPI") denegó una moción de relevo de una sentencia de desahucio dictada en rebeldía contra quien obtuvo la posesión de una residencia luego de haber estipulado que su ex esposa tendría la posesión de la misma. Como se explica a continuación, concluimos que actuó correctamente el TPI, pues (i) la petición de quiebra iniciada por el demandado no privó de jurisdicción al TPI porque la posesión en controversia no era parte del caudal del demandado al presentarse la petición y (ii) no existe alguna otra razón que justificara el relevo solicitado.

I.

El 1 de junio de 2024, la Sa. Digna Rivera Bonilla (la "Esposa") presentó la acción de referencia, sobre desahucio (la "Demanda"), en contra del Sr. José Burgos Negrón (el "Esposo"). Alegó que era co-titular, con el Esposo, de un inmueble ubicado en Cayey (la "Residencia"). Indicó que, desde diciembre de 2016, se había divorciado del Esposo y que, luego, se presentó una acción sobre

---

[1] Orden Administrativa OATA-2024-127 de 20 de noviembre de 2024 donde se modifica la composición del panel.

división de comunidad post-ganancial (la "Acción de Liquidación", EAC2018-0055). El Esposo fue emplazado personalmente el **10 de junio**.

La Esposa expuso que, en la Acción de Liquidación, se sometió, en **agosto de 2018**, un *Escrito Sometiendo Estipulación* (el "Acuerdo"), el cual se incluyó como anejo a la Demanda, y mediante el cual el Esposo acordó que la Esposa "continuará viviendo en la [Residencia]" y que, "en dicho aspecto", el Esposo "no intervendrá de manera alguna". En la Acción de Liquidación, el TPI, en agosto de 2018, mediante una Resolución, copia de la cual se acompañó como anejo de la Demanda, le impartió su "aprobación" al Acuerdo y ordenó su "estricto cumplimiento". La Esposa alegó que, aunque actualmente "recibe cuidados especiales en el Hogar San José en Cayey", ella "sale del hogar de 2 a 3 días a la semana y disfruta de [la] Residencia junto a su familia".

La Esposa aseveró que, "desde al menos el **14 de mayo de 2024**", el Esposo, "en claro incumplimiento" con lo estipulado en el Acuerdo, "cambió la cerradura de la puerta principal de la [Residencia] y la ocupó, impidiendo que [ella] pueda entrar, usar y disfrutar la misma". Solicitó al TPI que ordenase el lanzamiento del Esposo de la Residencia.

Señalado el caso para juicio en su fondo, el Esposo no compareció. No obstante, según la Minuta correspondiente, el Esposo se había comunicado con el tribunal ese día "indicando que estaba indispuesto de salud, que al momento no t[enía] abogado y que no podía comparecer". El TPI transfirió el juicio para una fecha posterior.

Llegado el nuevo señalamiento, y según la correspondiente Minuta, el Esposo no compareció, ni personalmente ni a través de alguna representación legal. El TPI tampoco había recibido llamada o comunicación del Esposo, ni este había comparecido por escrito

de forma alguna en el caso. Por tanto, el TPI le anotó la rebeldía al Esposo y procedió con la vista evidenciaria.

El 22 de agosto, el TPI notificó una Sentencia (la "Sentencia"). El TPI encontró probado que los hijos de la Esposa "la busca[ba]n en el Hogar y la llevaban a su residencia para cocinar y compartir con ... su familia y nietos". En atención al incumplimiento del Esposo con el Acuerdo, asunto que el TPI encontró probado, el TPI declaró con lugar la Demanda y ordenó al Esposo desalojar la Residencia.

El 29 de agosto, el Esposo presentó una *Urgente Moción ... de Relevo de Sentencia por Nulidad ...* (la "Moción"). Alegó que, el día del juicio, él estaba hospitalizado y que ello le constaba a la Esposa. Además, planteó que el TPI no tenía jurisdicción para emitir la Sentencia porque la Residencia es parte de un caudal "administrado por el síndico federal de quiebras", a raíz de una petición de quiebras (la "Petición") pendiente **desde el 2022** en la "Corte Federal de Quiebras". La Esposa se opuso a la Moción.

Mediante una Resolución notificada el 25 de octubre (la "Resolución"), el TPI denegó la Moción.

Inconforme, el 14 de noviembre, el Esposo presentó el recurso que nos ocupa, en el cual reproduce lo planteado en la Moción. Unos días después, presentó una moción en auxilio de jurisdicción, la cual denegamos luego de que la Esposa presentara un escrito en oposición a la misma y a la petición que nos ocupa. Disponemos.

II.

A raíz de la presentación por un deudor de una petición de quiebras, se activa una paralización automática (la "Paralización") que surge del Código de Quiebras de los Estados Unidos (el "Código"). Véase 11 USC sec. 362. En general, y sujeto a ciertas excepciones y condiciones, la Paralización tiene el efecto de congelar toda acción pendiente contra el deudor, así como de evitar el inicio

de acciones nuevas contra dicha parte. El propósito de la Paralización es proveer un respiro al deudor y proteger también a sus acreedores evitando que los activos del deudor desaparezcan de forma desorganizada ante las acciones individuales de otros acreedores. Véase, Collier on Bankruptcy, Lawrence P. King (1996), 15th ed., Vol. 3, sec. 362.03, a las págs. 362-13 y 14.[2]

Entre otras cosas, el Código dispone que se paralizará "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that **was or could have been commenced before the commencement of the case** under this title, or to recover a claim against the debtor that **arose before** the commencement of the case under this title", así como "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". 11 USC sec. 362(a)(1)(3)y (6).[3]

En lo pertinente, así pues, la Paralización, primero, impide el "comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto en contra de [un deudor], o para ejercitar cualquier acción cuyo derecho nació antes" de que se presentara la Petición. *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 491 (2010)

---

[2] "The stay provides the debtor with relief from the pressure and harassment of creditors seeking to collect their claims. It protects property that may be necessary for the debtor's fresh start and ... provides breathing space to permit the debtor to focus on its rehabilitation or reorganization. In addition, the stay provides creditors with protection by preventing the dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution".

[3] El Código define *claim* como:

> **(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> **(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 USCA § 101(5).

(énfasis suplido); 11 USC § 362(a)(1), (2), (5), (6) y (7).  Segundo, impide el inicio, o continuación, de "cualquier acción para obtener la posesión de una propiedad que pertenezca al caudal o que provenga del caudal, o para ejercer el control sobre la propiedad del caudal [independientemente de si la acción pudo comenzar previo a que se presentara la Petición]". *CMI Hospital v. Depto. Salud*, 171 DPR 313, 322 (2007); *In re Mason*, 45 BR 498, 500 (Or. 1984); 11 USC § 362(a)(2), (3), (4).

III.

Como cuestión de umbral, concluimos que el Esposo no colocó al TPI en posición de relevarlo de la Sentencia por razón de su supuesta hospitalización el día del juicio (29 de julio).  Adviértase que el Esposo no sometió prueba al respecto, y ni siquiera abundó sobre las razones por las cuales su hospitalización le habría impedido comunicar al TPI oportunamente la situación y solicitar una posposición.

Resaltamos que, en la fecha inicial del juicio (10 de julio), y a pesar de que el Esposo había sido emplazado un mes antes, este no compareció al señalamiento ni, a esa fecha, había anunciado su representación legal.  En vez, se comunicó con el TPI, alegó que tenía una situación de salud, y el TPI pospuso la vista para el 29 de julio.

Llegado el 29 de julio, casi dos meses luego del emplazamiento, y más de tres semanas luego de la primera posposición, el Esposo no compareció.  Tampoco solicitó antes una segunda posposición, ni procuró que alguna representación legal compareciera.  El Esposo ni siquiera ha intentado articular, mucho menos con la especificidad y la prueba correspondiente, una justificación para su patente falta de diligencia.

Por otro lado, y contrario a lo que arguye el Esposo, concluimos que el TPI sí tenía jurisdicción para adjudicar la Demanda.  Ciertamente, no estamos ante una reclamación que se

instó, o pudo haberse instado, antes de la Petición, pues los hechos que dieron pie a la Demanda ocurrieron en mayo de este año, y la Petición se presentó en el 2022. Véase *In re: Lennington*, 286 B.R. 672 (C.D. Ill. 2001); Collier, op cit. ¶ 362.03 [3][d].

Tampoco estamos ante una reclamación para tomar posesión de una propiedad del caudal del Esposo. La regla general, sujeta a excepciones no aplicables aquí, es que el caudal (o el "estate") del Esposo se define con relación al momento en que se presenta la Petición. Véase 11 USC sec. 541(a)(1) (definiendo el caudal como el cojunto de "legal or equitable interests of the debtor in property **as of the commencement of the case**") (énfasis suplido). Cuando se presenta la Petición en el 2022, la posesión física de la Residencia no era parte del caudal del Esposo; de hecho, este había cedido la misma años antes a la Esposa, a través del Acuerdo. Aunque el interés propietario del Esposo en la Residencia sí es parte del caudal, por medio de la Demanda no se pretende privar al Esposo de dicho interés. Por tanto, la acción de referencia no puede considerarse como una dirigida a privar al Esposo de la posesión de parte de su caudal y, por tanto, la Paralización no impedía al TPI adjudicar la Demanda.

IV.

Por los fundamentos anteriormente expuestos, se deniega la expedición del auto solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones